## ADLER v. CLOUD.[1]

1. EVIDENCE.—Defendant, as a witness, having admitted on cross-examination that he had made certain statements in an affidavit exhibited to him, the affidavit itself, when introduced on his examination in reply, may be received for the single purpose of showing what defendant had said.

2. IBID.—ASSIGNMENT FOR CREDITORS.—In action assailing an assignment for the benefit of creditors, alleging a failure to assign all of the debtor's estate, the assignor may testify in his own behalf that he owned no real estate at the date of his assignment.

3. EXCEPTIONS—APPEAL.—This court will not look through fifteen printed pages of testimony of a witness M., to discover whether there is any foundation for an exception alleging error "in not sustaining the objections of the plaintiffs to the testimony of M., when it appears from the report of the testimony that objection was made thereto."

4. PARTNERSHIP—A FINDING OF FACT by the Circuit Judge from testimony taken by the master and reported in writing, as to the existence of a partnership, approved.

5. ASSIGNMENT FOR CREDITORS.—A sale of a stock of goods in one city and an assignment for the benefit of creditors in another city, on the same day, being, in fact, two distinct transactions, the latter not being in contemplation when the former was made, do not constitute parts of one assignment with preferences.

6. FINDINGS OF FACT—WITNESSES.—The Circuit Judge sustained in the weight accorded by him to the testimony of defendant, notwithstanding his violation of the law made by him in making a sale of his goods when insolvent, and to the testimony of his witnesses, notwithstanding some contradictions.

7. IBID.—Findings of fact by the Circuit Judge, so far as material, approved.

8. ASSIGNMENT FOR CREDITORS—PRIOR TRANSFERS.—A failing debtor is encouraged by the law to make an assignment for the benefit of his creditors, but such assignment must convey his whole estate and give no preference, except to releasing creditors; and the law provides machinery adequate for the protection of creditors. Any transfer of property is void where made by an insolvent debtor to a preferred creditor within ninety days before a general assignment, the creditor having reasonable cause to believe that the debtor was insolvent, and that the transfer was made in fraud of this law.

---

[1] This case and all the succeeding cases in this volume were heard while Mr. Justice McGowan was on the bench, but the decisions not being rendered until after the expiration of his term (July 29, 1894), he, of course, took no part in the decisions. This case of Adler *v.* Cloud and the next case, Mauldin *v.* Greenville, were heard at November Term, 1893; all the others at April Term, 1894.

9. IBID.—An assignment for creditors is not void because it fails to name the time within which the preferred creditors must accept and release, where the law enables such creditors to come in and fix the day for distribution of assets.

10. IBID.—The description and valuation of the property in the debtor's schedule in this case was as specific as was possible, and, therefore, the deed was not void for vagueness of description.

11. IBID.—HOMESTEAD.—Nor was it invalid by reason of a direction, that the chattel exemption to which the debtor was entitled under the homestead laws of this State should be in money derived from sale of the property assigned.

12. IBID.—Nor was it invalid because of unlimited power given to the assignee by the terms of the deed as to the time, manner, and terms of disposition and distribution, all such powers being subordinate to the power given by law to the creditors to regulate these several matters.

13. IBID.—This deed did not fail to convey all of the debtor's property, so far as the evidence discloses. The failure to incorporate any items in the schedule pertaining to a class of property mentioned generally in the deed itself, does not show that there were such items.

14. CONTRACTS.—Every contract embodies the law governing such contracts as much as if stipulated in the contract in express terms.

15. ASSIGNMENT—ACCEPTING CREDITORS. [1]—Creditors who have not accepted under a deed of assignment cannot except to a notice which had been given by the assignee, that he would pay out the funds in his hands on and after a day named. Assigned estates should be settled promptly, and creditors who have accepted have a right to so demand.

16. JUDGMENT FOR DEBTS.—Judgment dismissing a complaint by creditors to vacate a deed of assignment affirmed, subject to the rights of the plaintiff to apply in this action for judgment against the assignor on their demands.

Before NORTON, J., Spartanburg, March, 1893.

Action by Adler Bros. & Co., and others, against J. S. Cloud and G. W. Nichols, as assignee.

*Messrs. Carlisle & Hydrick,* for appellants.

*Messrs. Duncan & Sanders* and *A. E. Moore,* contra.

November 26, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. Joseph S. Cloud, a merchant, who had

---

1 The necessity of accepting an assignment for creditors is the subject of an exhaustive note with the case of Alliance Milling Co. *v.* Eaton, 24 L. R. A., 369.

been in business for nearly a quarter of a century, and who
had a large clothing store at Spartanburg, in this State, and
who also had a large clothing store in the city of Charlotte, N.
C., having allowed one Dixon to obtain judgment against him
for less than $100 (which judgment had been incorrectly re-
ported in a newspaper to be some $8,000), on the 9th day of
November, 1891, had his creditors to come upon him with in-
quiries after his financial ability to meet his paper soon to ma-
ture, and, probably, some that had already matured, and had,
at least, one proposition from some one of his creditors to ad-
vance him money to pay off pressing creditors, provided the
debt he already owed such creditor, and such advance offered
to be made, should be secured by a mortgage on his stock of
goods. This last proposition he declined. It should have
been stated that the commercial business in Spartanburg was
conducted by him in person, under the name of J. S. Cloud's
Store, while that in Charlotte, N. C., was conducted for him
by one J. A. McDowell, as the McDowell Clothing Company,
and that the goods at both places were purchased by J. S.
Cloud, and his own notes given therefor.

He had been negotiating for a loan of $12,000. Of course,
the excitement as to his ability to pay would affect this effort
at a loan. On the morning of the 9th of November, 1891, he
went by rail to Charlotte, N. C., and sought the advice of
learned counsel as to the legality of his securing to his wife,
Mrs. J. S. Cloud, the sum of $3,500, that he owed her for money
borrowed of her in the management of his commercial ventures,
and also of his securing to his manager clerk, J. A. McDowell,
some $1,000 that he owed him as his wages, by a mortgage on
the property of the McDowell Clothing Company in Charlotte,
N. C. This course was advised against; but it was finally sug-
gested that this stock of goods might be sold by J. S. Cloud to
his wife and J. A. McDowell, their debts credited on the pur-
chase, and notes given him by Mrs. Cloud and J. A. McDowell
for the balance.

The following arrangement was made: J. S. Cloud, acting for
his wife (she was in Spartanburg at that time), and J. A. Mc-
Dowell agreed to purchase the business, paying fifty cents on

the dollar for the whole stock in trade, stock to be taken imme-
diately, the debts of Mrs. Cloud and Mr. McDowell to be de-
ducted from the amount of the stock at fifty per cent. thereof,
and the notes of Mrs. Cloud and Mr. McDowell to be given
Cloud for the balance of the fifty per cent.   It was agreed that
the stock on hand should be estimated at $13,000, and the ar-
rangement carried out on that day on that basis, with an agree-
ment between the parties that stock should be taken at once,
and if, when taken, the same should amount to more than
$13,000, additional notes should be given, so that the notes
should run for proportionate amounts, to be made at the end of
each month thereafter succeeding.   The stock being estimated
that day at $13,000, the fifty per cent. thereof was $6,500, and
deducting the debts of the two (Mrs. Cloud and J. A. McDow-
ell), $4,500, left $2,000 as due by them.   Accordingly six notes,
each for $333.33⅓, due one, two, three, four, five, and six
months thereafter, respectively, and subsequently five other
notes, aggregating $1,700, were executed, as the stock when
taken amounted to $17,000.

With these notes J. S. Cloud hurried on his return on that
day to Spartanburg, at which place, when he reached it, he
freely disclosed what he had done to his creditors.   That night
he was aroused at about midnight by one of his counsel, Andrew
E. Moore, Esq., of the Spartanburg bar, and told that said
counsel had learned that some of his creditors proposed to at-
tach said notes, and thereby get an advantage over his other
creditors, and such counsel advised him that the only way to
prevent such a result was to make an assignment of his whole
estate for the benefit of his creditors.   This he very reluctantly,
and after much persuasion by his lawyer, consented to do.   The
assignment was made that night by deed to George W. Nicholls,
Esq.   Such assignee at once entered into the possession of the
assignor's whole estate, and on the 10th November, 1891, issued
a notice of his assignment, and called on the creditors to meet
in the city of Spartanburg on the 17th November, 1891, as re-
quired by the statute in such cases made and provided, to elect
an agent, etc.

On the 13th day of November, 1891, Ambach, Burgunder &

Co., Wyler, Ackerland & Co., suing in their own behalf and in behalf of such other creditors of J. S. Cloud as might elect to come in as plaintiffs, brought their action in the courts of North Carolina against J. A. McDowell, J. S. Cloud, and his wife, M. F. Cloud, as defendants, to set aside the sale of the assets of the McDowell Clothing Company by J. S. Cloud to the said Mary F. Cloud and J. A. McDowell, on the ground that such sale was void, having been made to hinder, delay, aad defraud the creditors of the said J. S. Cloud, and that a receiver be appointed. At the hearing of the rule issued on the 13th day of November, 1891, which was on the 23d November, 1891, the court appointed a receiver, and continued its preliminary injunction until the cause should be heard on its merits. Such receiver sold the goods at forty-four cents of their cost, and now has in bank $9,481.90 as such receiver. To this suit the assignee, George W. Nicholls, on his own motion, has been made a party defendant, claiming the funds as such assignee.

On the 17th November, 1891, one-third in the amount of the creditors of J. S. Cloud met with the assignee in Spartanburg, and did not elect an agent or agents, but authorized the assignee to issue a notice to creditors as the judgment of the creditors there assembled, that a compromise at fifty per cent. of their debts should be made by the creditors with J. S. Cloud. On the 18th day of November, George W. Nicholls, as assignee, notified the creditors that on the 18th day of December, 1891, he would proceed to pay the creditors who would accept and release by that time, such assets as were in his hands. On the 1st December, 1891, the said George W. Nicholls, as assignee, sold the stock of goods of J. S. Cloud, at Spartanburg, to Vorhees, Miller & Co., at fifty-three cents on the dollar, in cash.

On the 5th December, the present action was commenced in the Court of Common Pleas for Spartanburg County, in the State of South Carolina, by Adler Bros. & Co. and the Empire Novelty Company, as plaintiffs, against J. S. Cloud and George W. Nicholls, as assignee of J. S. Cloud, as defendants, setting out in details the facts hereinbefore recited, and praying for judgment against Cloud for their respective demands; that the

alleged assignment be adjudged fraudulent and void, and set aside; that the defendant Nicholls, as assignee, be enjoined from paying out any of the funds in his hands as assignee; that a receiver be appointed to take charge of the estate of J. S. Cloud; and that Nicholls, as assignee, account to such receiver for all property that has come into his hands, and for such other relief as may be just. Judge Wallace, on the 17th December, 1891, granted an order restraining the assignee from paying out the funds in his hands until the further order of court. On the 28th March, 1892, Ambach, Burgunder & Co., Wyler, Ackerland & Co., Heavenrich, Trounstine & Co., E. D. Latta, calling himself the Charlotte Clothing Manufacturing Company, and Lowman's Sons & Co., all of whom were plaintiffs in the action in North Carolina, on petition, were, by an order of Judge Fraser, made parties plaintiff in this action, and Judge Wallace's order was continued of force.

The answers of J. S. Cloud and George W. Nicholls, as assignee, controverted every fact in the complaint necessary to the plaintiffs obtaining the relief prayed for. The testimony, under an order therefor, was taken before H. B. Carlisle, Esq., as master. The cause came on to be heard before his honor, Judge Norton, at the spring term, 1893, of the court for Spartanburg, and on the 14th August, 1893, he filed the following decree:

"This is a creditors' action to declare a sale made by J. S. Cloud, in Charlotte, N. C., of his stock of goods there to his wife and clerk, as part of an assignment for the benefit of his creditors made by him afterwards on the same day in Spartanburg, S. C., and to declare the whole void; and, if they be not one assignment, that each be declared fraudulent and void. I am convinced that J. S. Cloud is honest, according to his conception of the term, and, therefore, I rely upon his direct statements of matters of fact, and the same may be said of all the witnesses, and any contradictions in testimony may be attributed to misapprehension at the time, or forgetfulness of the precise occurrences or language used, as the case may be. It seems to me, however, that J. S. Cloud conceived that he might honestly provide for his wife and children at the expense

of creditors, or prefer creditors who had or were likely to favor him, at the expense of other just creditors, whenever he could do so, and keep within the law. I conclude, also, that J. S. Cloud had been for years struggling in his business, hampered by a load of debt, and that by his various expedients, he had always been able to tide over the crisis, until he thought he could continue to do so indefinitely.

"With this thought uppermost in his mind, he went to Charlotte and consummated the sale of the stock of goods there to his wife and J. A. McDowell. Knowing himself to be insolvent, he incidentally thought proper to secure the debts due to the respective purchasers, lest this expedient might fail to tide him over. J. A. McDowell and Mary F. Cloud, his wife, had reasonable grounds to believe that J. S. Cloud was insolvent. At the time of making such sale, J. S. Cloud thought he could, and intended to, continue business, and was not contemplating the making of an assignment for the benefit of his creditors. On his return to Spartanburg, on the advice of his attorney, he changed his mind, and made the assignment. The two transactions are, therefore, separate and distinct, not connected at all in J. S. Cloud's mind nor in fact, and cannot, therefore, together constitute an assignment under our statute; but the facts stated do render the sale obnoxious to section 2015 of our General Statutes. This view of the case leaves the validity of the assignment to be considered as a separate instrument. Every conveyance of property or agreement is made subject to law, and is to be read as if every provision of the law were incorporated in the conveyance itself. And it seems to me that our assignment act of 1828 was made to aid the creditors in promptly securing their own under an assignment without appealing to the Court of Equity. For instance, by providing that they [the creditors] may order a distribution of the funds. In the cases of *Tennant* v. *Stoney*, 1 Rich. Eq., 233, and *Beall* v. *Lowndes*, 4 S. C., 258, it is said that when no time is fixed for creditors to accept, who are on that condition to be preferred, they may accept at any time before the distribution of the fund. I do not think the failure to fix a time for preferred creditors to accept vitiates the assignment.

"Again, I do not think the description of the property assigned is so vague, indefinite, and inaccurate that the creditors could not intelligently make their election whether to accept or reject the terms offered them. On the contrary, I think the description as full as it ought to be in an instrument of this character. It describes the property, so that it may be located and identified, and inquiry would have given all the information necessary to enable the creditors to form their judgment of its value. One of the chief complaints under this head relates to the assignment of the Charlotte store, or its proceeds, but this seems to me full and explicit. J. S. Cloud, having counsel, must have known that the sale was voidable at the option of creditors, but not at his, so he provided that the assignee should have all he could convey.

"Plaintiffs also contend that the provision in regard to J. S. Cloud's homestead renders the assignment obnoxious to section 2014, Gen. Stat., because it directs the conversion of the estate into money, and its distribution when so converted ['after setting apart whatever the assignor is entitled to under the homestead act'], arguing that it requires the setting apart of money instead of property, to the detriment of creditors, at least, to the extent of the commissions, and the risk of depreciation in the value of property between the time the homestead would be set off in kind and the time required to effect its conversion into money. I do not think this the proper construction, but rather that the assignor, by the clause within the brackets, contemplated the setting apart of his homestead in kind. If he did not, but meant to have his homestead in kind sold, that would necessarily be at his own expense. I do not regard the risk of fluctuation in this small amount of property, in the short time required for its conversion, of sufficient consequence to avoid the assignment, but it is covered by the rule, *de minimis non curat lex.*

"I think the discretion of the assignee is not inconsistent with the provisions of the statute wherein it regulates his conduct, and that the statute is to be read as a part of the assignment, and makes a valid paper in this particular. Common sense, common law, and the statute require the assignee to take

charge of and to exercise his business judgment in the conver-
sion of it into money, and none of them restrict him to any
particular time or mode of sale of tangible property, or collec-
tion of choses, but recognizing and controlling his discretion
by the supervision of the creditors through their agent and
committee, and, in a certain contingency, the judge, differing
from the Arkansas statute, which required the performance of
certain duties within a prescribed time. The objection, that
the deed does not convey all the property of the debtor, is not
a valid one, so far as I can see. It is adjudged, that the com-
plaint be dismissed."

The plaintiffs appeal from this decree upon various grounds,
and although we do not reproduce them just now, we propose
to consider and pass upon each one before we close. The de-
fendants give notice, under the practice recognized by this
court, of additional grounds upon which the decree of the Cir-
cuit Judge may be bottomed, other than those submitted in the
decree itself. If, after thorough consideration of the grounds
of appeal, we should affirm the decree, it will not be necessary
to consider these suggestions of the defendants (respondents);
otherwise, we must consider them. We have concluded to con-
sider the grounds of appeal in this form: First, those that allege
error in the admission of certain testimony at the trial; second,
such as allege error in the findings of fact by the Circuit Judge;
third, such as allege error in conclusions of law by the Circuit
Judge.

FIRST. When J. S. Cloud was examined as a witness, in his
cross-examination by the appellants, he was asked if he had not
made certain statements in his affidavit marked "N,"
which was first exhibited to him for his admission as to
his signature thereto. He replied that he had. On his
examination in reply, his counsel offered the affidavit itself.
This was done, not to make the statement in the affidavit testi-
mony in the case, but to show what he had said in the matters
which appellants had inquired of him. Restricted to this use,
we do not see that it was inadmissible. This exception (being
part of eleven) is overruled.

J. S. Cloud was allowed to testify that at the date of his as-

signment he owned no real estate.   When it is remembered that the appellants were assailing the assignment because it did not contain all of the assignor's estate, it will be perceived that this testimony was pertinent to that inquiry. There was no testimony to the contrary.   No injury has come to appellants by its introduction.   This exception (tenth exception) is overruled.

The other part of the eleventh exception, relating to the admission of Andrew E. Moore's testimony, is in these words: "In not sustaining the objections of the plaintiffs to the testimony of A. E. Moore, when it appears from the report of the testimony that objection was made thereto." The case shows that the examination of this witness covered about fifteen pages of printed testimony.   Thus the court is asked to sift all this testimony, to see when plaintiffs objected, and to surmise the grounds upon which such objections were based.   It was the design of the rules of this court on this subject to prevent such a result.   The appellants are not entitled to be heard in this form.   Such exception is overruled.

SECOND. In the fourteenth exception appellants contend that the Circuit Judge should have found as a fact that J. A. McDowell and J. S. Cloud were partners in the clothing store, in Charlotte, N. C., known as the McDowell Clothing Company.   An examination of the testimony shows that Cloud furnished all the goods in that concern; that he alone contracted with the creditors for such goods so furnished; that his name alone appeared as the owner in bill heads and letter heads used in connection therewith.   Then the positive oath of J. S. Cloud that he alone was the owner.   This is substantiated by J. A. McDowell.   And the only testimony offered in contradiction is some loose expressions of Clould and McDowell, but both either deny or explain such expressions.   The Circuit Judge found that no such partnership existed.   The finding of fact is not without testimony to support it, nor is it opposed by the overwhelming weight of the testimony.   This exception is overruled.

In the first subdivision under the second ground of appeal it is suggested that the Circuit Judge erred when he held that

the sale made by J. S. Cloud to J. A. McDowell and his wife, Mary F. Cloud, of his stock in trade in the McDowell Clothing Company, and the general assignment of his property to George W. Nicholls on the same day, were not in fact parts of one transaction. We have examined the testimony carefully relating to this branch of the cause. Ordinarily, no doubt, consecutive steps relating to the same subject-matter, occurring on the same day, in the conduct of the individual, may be said to belong to one and the same transaction as the component parts thereof, but this result is not necessarily true. Reflection will convince any one that no human creature is sufficiently master of himself or of events to lay out a plan sufficiently comprehensive as to cover all the occurrences of a day. This must be true when the conduct of others frequently enters in to alter, modify plans already made, or to suggest plans altogether new. It is perfectly consistent with truth to say that when J. S. Cloud went to Charlotte early on the morning of the 9th November, 1891, and consulted counsel there, he had in his mind the securing of the debts of his wife and confidential manager by a mortgage on his property, with no thought of afterwards making an assignment.

Such a step is consistent with the purpose on his part, which is in proof here, and uncontradicted, that he had arranged to borrow $12,000 in cash to carry on his business, for it had been the habit of Mrs. Cloud, his wife, to lend her credit and substance to him in his business; and no doubt, and it is reasonable to suppose that, he intended to obtain from her the use of this mortgage for $3,500 on such stock in trade in Charlotte as the basis for the loan of money. The bank in Spartanburg was accustomed to take Mrs. Cloud's paper. She had property of her own. This debt of $3,500 was actually due her by J. S. Cloud. When the counsel in Charlotte, by their knowledge of the laws of that State, showed Mr. Cloud that his mortgage could not be given to his wife and McDowell, it was suggested by them that a sale of the property would be valid. This was made, and the debts of Mrs. Cloud and McDowell paid by this sale, and their notes for $2,000 then made, and $1,700 afterwards were made and placed in his hands. How unnatural it

would have been for J. S. Cloud to have made this sale in
Charlotte, and afterwards the assignment in Spartanburg, on
the same day, as parts of one transaction, when, under the laws
of this State concerning assignments, this sale, made to protect
the debts of his wife and McDowell, would have been declared
void. Under the testimony, the Circuit Judge found that the
two acts were distinct one from the other. We are not dis-
posed to differ as to this finding of fact, and the exception is
accordingly overruled.

The third ground of appeal is that the Circuit Judge erred
in finding that "J. S. Cloud is honest, according to his con-
ception of the term, and therefore I rely upon his direct
statements of matters of fact; and the same may be said
of all the witnesses, and any contradiction in testimony
may be attributed to misapprehension at the time, or forget-
fulness of the precise occurrences or language used, as the case
may be." A truthful man may commit offences against the
law either on its civil or criminal side. This is about what the
Circuit Judge meant to say. He had scanned the testimony
of Cloud closely; he had made a comparison between his state-
ments as to acknowledged facts with those of other witnesses
as to the same facts; he had compared his verbal statements
with his written statements relating to the same matters; he
had noticed his entire candor in the disputed matters here in-
volved; and all these matters convinced him that Cloud was
telling the truth. Yet, while he was truthful, he did disre-
gard what the law says a man must do in his business dealings
with others. Therefore, the Circuit Judge uses the moderated
expression, "honest according to his conception of the term,"
intending thereby to affirm his conviction of Cloud's truthful-
ness without committing himself to uphold Cloud's conduct
towards others in business. And so far as this exception crit-
icises the language of the Circuit Judge in his reference to the
credit he attached to the other witnesses, explaining that the
seeming contradiction, at a few points in their testimony,
arose from a misconception at the time, or a failure afterwards
to recall exactly what was said, we fail to agree with the ap-
pellants, for we think the testimony abundantly sustained the

Circuit Judge in all these findings. This exception is over-ruled.

Appellants' fifth exception controverts the finding of the Circuit Judge that J. S. Cloud made the sale in Charlotte to his wife, thinking that he could tide over the financial crisis then upon him, and that he incidentally thought proper to secure the debts due the purchasers (his wife and McDowell), lest his expedient might fail him. Now, so far as the finding of fact that Cloud made the sale to his wife of his Charlotte business thinking that he could tide over the financial crisis then upon him, we think the Circuit Judge was sustained by the testimony. The latter part of the proposition is not free from doubt. It looks to us that Cloud's purpose at first was to secure his wife's debt as well as that of McDowell, and, therefore, we are not prepared to go so far as to say that he incidentally thought proper to secure the debts due such purchasers. If this was his prime object, it cannot be said to rise incidentally. This last part of the finding is immaterial in this case, as will hereafter appear, and, therefore, we content ourselves with this qualified assent to the entire proposition of the Circuit Judge here complained of.

The sixth exception of appellants, in so far as it relates to a finding of fact by the Circuit Judge, may be thus stated: Appellant alleges that it was an erroneous finding of fact by the judge when he held that at the time of making said sale (that at Charlotte), J. S. Cloud thought he could, and intended to, continue business, and was not contemplating the making of an assignment for the benefit of his creditors, and the transactions are separate and distinct. This finding of the Circuit Judge has plenty of testimony to support it, nor is it opposed by the manifest weight of the testimony. The finding is correct, or otherwise there has been wilful and corrupt perjury by two witnesses in this cause, namely: J. S. Cloud and Andrew E. Moore. Both swear that Moore waked him up at the hour of midnight on the 9th November, 1891, when Moore for the first time told Cloud that he must make an assignment, the deed for which he (Moore) of his own accord had prepared and brought with him; that the motive to this haste was the anticipated at-

tachment by some of Cloud's creditors of these notes that day given him by McDowell or his (Cloud's) wife, thereby giving such attaching creditors an advantage; that Cloud with great reluctance got out of his bed, and executed this deed of assignment. Where is there anything unnatural in this conduct of either party? They both swear that it occurred as detailed by them. As before stated, it is the truth or it is false swearing. What is there in the cause to make the Circuit Judge hesitate to believe Cloud or Moore? Nothing. There is no profit to flow to either therefrom. The character of neither is impeached. They are both men of more than ordinary intelligence.

THIRD. It is a fundamental principle in law, that where one person receives the money, goods or other property of another by purchase on a credit, he thereby incurs an obligation to the former owner of such money, goods or other property, which is not discharged until such obligation is fully paid. This is a relation of a debtor to his creditor. Hence it is that all the property owned by the debtor, or in which he has any interest, is made responsible for the payment of such obligations of indebtedness. The tenderness of the law exonerates a certain part of a debtor's estate, real and personal, from liability under legal process, from liability to pay debts, provided such exemption is in existence at the time the debt is created. As long ago as the year 1828, in this State, when a debtor owed more than he could pay, he was allowed to assign his property for the payment of his debts. Instead of provoking opposition from his creditors by pursuing this course, a debtor, under such circumstances, is to be commended, for he thereby voluntarily does what the law would do for him. Under this old law and the amendments to it, it is required that a debtor shall in good faith surrender his whole estate. He is not allowed to reserve any benefit, secret or otherwise, to himself, under his deed of assignment, except that he is allowed to stipulate that to creditors who shall accept under such assignment, and execute a release of their respective demands, a preference shall be given.

The plan, under these laws, is that the whole estate of the assignor shall vest in the assignee, freed from any interference or control of the assignor; that the assignee shall call on the

creditors by his notice therefor within ten days after the assign-
ment, to meet and select an agent or agents to act in conjunction
with the assignee or assignees; and in case the creditors refuse
or neglect to appoint an agent or agents in ten days after they
have been called together, then the assignee or assignees may
proceed to sell or otherwise dispose of the assigned effects with-
out the concurrence of the creditors. By the provision of this
law the creditors have it in their power to require, from time
to time, full and exact reports from the assignee and agent "to
direct and prescribe the time and mode of selling and the terms
of sale, order a distribution of the assets on hand, and a final
close of the concern." Then, too, in case the assignee shall
dispose of any property belonging to the assigned estate before
the creditors meet to appoint an agent, such sale is void. Thus
it will be seen how careful the law has been made to protect
every interest of the creditor by giving him full control of the
management of the agencies employed under the law to carry
out the assignment.

In 1882, it was provided that if any person, being insolvent,
within ninety days before making any assignment, shall, with
a view to give a preference to any creditor, procure or suffer
any part of his property to be attached, sequestered, or seized
on execution, or make any payment, pledge, assignment, trans-
fer, or conveyance of his property, directly or indirectly, abso-
lutely or conditionally, the person receiving such payment, etc.,
of his property, and having reasonable cause to believe such
person to be insolvent, and that such attachment, sequestration,
seizure, payment, pledge, assignment, or conveyance is made
in fraud of this chapter (Gen. St., ch. 72; 1 Rev. Stat., ch. 80),
the same shall be void, and the assignee may recover the prop-
erty, or the value of it. So much for a reference to the general
provisions of our laws regulating assignments, which may be
found in sections 2137 to 2148, inclusive, of 1 Rev. Stat.

We will now undertake to examine the propositions involved
in the grounds of appeal here, wherein the conclusions of law
of the Circuit Judge are impugned. In the first ground of ap-
peal appellants allege several reasons why the assignment should
have been held fraudulent and void by the Circuit Judge.

(a) Because no time was fixed therein within which those creditors who come in and accept the benefits thereof and release the debtor must do so, notwithstanding those who do so are given an advantage. It would be enough to say that the provisions of our laws regulating assignments do not require such time to be fixed in the deed of assignment. No doubt, a reasonable time might have been fixed for this purpose by the assignor in the deed. The terms of the law of assignments put it in the power of the accepting creditors to "order a distribution of the assets on hand." The assigned property belongs to the accepting creditors to the extent of their debts, and the assignor should certainly not be held to have committed a fraud against the act, because he trusted to that common-sense proposition that commercial creditors, with their money in the hands of another person as their agent, bearing no interest, and with the law giving them the power to order it paid to them, would attend to their own business. This exception is overruled.

(b) Because the description of the property assigned is so vague, indefinite, and inaccurate that the creditors cannot intelligently make their election whether they will accept or reject the terms of the assignment. We are not able to see any force in this proposition when applied to the facts of this case. No doubt, appellants base this suggestion upon the fact that the assignor, Cloud, in his inventory of assets, attached to the deed, referred to his interest in two patents, the Christopher grading machine and the fireplace heater, and also $250 Converse College stock, and any interest in the Spartanburg Herald Company; and they complain that assignor did not attach a value to each of these. It was in proof that the Converse College stock was all that had any market rating. How Cloud could attach a value to things that had no value, if he acted honestly, we cannot see. He did all he was required to do when he surrendered them to his creditors, and named them specifically in his schedules. It sometimes happens that patents at present valueless, afterwards acquire a value. If such should do so, Cloud put it in the power of his creditors to enjoy the fruits of such ventures. This exception is overruled.

(c) Because it provides that the assignee must convert the assigned estate into money, and pay the assignor a sum equal to his exemption in personal property in money out of the proceeds. The language of the deed, in conveying to the assignee, reserves from such conveyance property exempted from execution, "and requires the assignee to set apart whatever the party of the first part is entitled to under the exemption or homestead act;" and in construing this language, the Circuit Judge held that the assignor contemplated that the exemption of $500 to Cloud by the assignee should be in the property in kind, but that, even if the view of appellants was correct, the matter of assignee's commissions alone would come out of the assigned estate, and that the maxim of the law, *"De minimis non curat lex,"* would intervene. He also held, in this connection, that the matter of assignee's commissions was properly a charge upon such exemption itself. We see no error here.

(d) Because the unlimited power and discretion vested in the assignee by the terms of the deed as to the time, manner, and terms of the disposition of the assigned estate, and the distribution of the proceeds thereof, contravenes the policy of the law, as well as the positive provision of chapter 72 of the General Statutes of this State (1 Rev. Stat., ch. 80). We have herein heretofore shown that under the assignment laws of this State, creditors have a control over assignees in the management of their trust, especially on the very points referred to in this exception. We cannot see, therefore, that the exercise of a discretion by the assignor in his deed of assignment, by prescribing terms for the government of his assignee, necessarily interferes with the power conferred by law upon accepting creditors. It will be remembered that it was previously stated that if such creditors failed to elect an agent or agents, then the assignee could go forward and sell. Why may this exercise of power by the assignor be referred to this condition of things? Be this as it may, when the law gives creditors power to control in all the matters here complained of, it makes no difference if the assignor did speak in his deed otherwise. The law is supreme. Such an attempted exercise

of power by an assignor would not vitiate his deed. The exception is overruled.

(e) Because it appears upon the face of the deed that all the property of the debtor is not thereby conveyed to the assignee. Appellants contend that real estate, and an interest in the Charlotte stock of goods, are mentioned in the body of the deed, but neither are mentioned in the schedule thereto attached. If the assignor had no real estate, how could he name it in the schedule? It is true, it may be said, why refer to it, then, in the body of the deed? An honest man wishes to convey his whole estate. To do this, he frequently, in abundant caution, enumerates real as well as personal estate, when he only owns personal property. As to interest in the Charlotte stock of goods, so far as Cloud was concerned, when he made a deed of sale of it to his wife and McDowell, it was no longer his; he had sold it for their eleven notes aggregating $3,700. But no doubt his counsel told him that his creditors could elect to upset this sale, and he, therefore, included it in his deed, but only set out the notes of McDowell and Mrs. Cloud in his schedule. If Cloud had concealed this sale, it would have been a fraud. Having revealed it, and, as far as he could, put it in the power of his creditors under his deed of assignment, it was not a fraud against the act. Let this exception be overruled.

Appellants next contend that the assignment is fraudulent and void for the following reasons *dehors* the deed:

(a) Because the sale of the stock of goods in Charlotte, N. C., to two creditors, and the assignment on the same day, are in law but parts of one transaction, and together tantamount to a general assignment with preferences. We were well aware of the importance attaching to the findings of fact touching the identity of this sale of goods and the assignment on the same day, and hence we bestowed unusual care in its consideration. We found as a fact that the two events were distinct from each other, and not parts of one whole. We know of no principle of law that makes these two distinct transactions one and the same. Nor do we see that (b) under this head: "Because the sale of the Charlotte stock

was made to McDowell and Mrs. Cloud with intent to hinder, delay, and defraud other creditors, and with an intent to give them an unlawful preference over other creditors, and with intent to evade the laws of this State prohibiting preferences so made amongst his creditors by an insolvent debtor, and, therefore, the assignment made afterwards on the same day, whether made on account of, or by reason of, the previous transaction or in furtherance of the design thereof, is fraudulent or void"—that it can be made to vitiate the assignment. By our concurrence with the Circuit Judge in the finding as a fact that the two transactions were separate and distinct, it becomes immaterial whether eighty-nine days or sixty days or thirty days or twenty-four hours or twelve hours intervened. They are separate and distinct, the one from the other. The amendment to the law made in 1882, to which we have already referred, and to which reference is made by the Circuit Judge as section 2015 (now 2147) of the General Statutes, was designed to prevent preferences therein enumerated. Not that the debtor himself could set them aside, but through the intervention of creditors it could be done. It is true, that where and when it is established that the two apparently distinct transactions in time to the extent of ninety days, and yet in fact the two transactions are parts of one whole, the law declares the assignment void, because fraudulent. It is perfectly consistent for an assignment to be declared valid, and the attempt at a preference within the ninety days fraudulent, because constructively fraudulent. In such a case the two transactions in fact must be distinct, separate. These exceptions are overruled.

The fourth ground of appeal is disposed of by the reasoning and conclusions on the foregoing ground of appeal. It is, therefore, overruled. The language of this exception is: "In not holding the assignment fraudulent and void after holding that J. S. Cloud conceived that he might honestly provide for his wife and children at the expense of his creditors, or prefer creditors who had or were likely to favor him at the expense of other just creditors, whenever he could do so, and keep within the law." It is evident that the ap-

pellants here seek to make the assignment and the sale of goods at Charlotte to his wife and McDowell one and the same transaction. The language quoted from the Circuit Judge's decree had exclusive reference to the sale of the goods at Charlotte. We have held the transactions separate and distinct.

Again, in their seventh exception, appellants allege error in the Circuit Judge "in holding that every conveyance of property or agreement is to be read as if every provision of the law were incorporated in the agreement itself." By reference to the decree it will be seen that the Circuit Judge used the language quoted in this exception, while he was discussing the terms of the deed of assignment to show that such terms there used did not invalidate that instrument. It is true, such language quoted, when separated from the context, and possibly even then, is a very broad statement of a proper legal conclusion. It has been repeatedly held by this court and the United States Supreme Court that every contract made embodies the law governing such contracts as much as if so stipulated in the contract in express terms. This is what the judge meant to say. Restricted to the context where used, such language was not erroneous. The exception is overruled.

In their eighth exception appellants contend that the judge erred in holding that "In the cases of *Tennant* v. *Stoney*, 1 Rich. Eq., 233, *Beall* v. *Lowndes*, 4 S. C., 258, it is said, when no time is fixed for creditors to accept, who are, on that condition, to be preferred, they may accept at any time before the distribution of the fund. I do not think the failure to fix a time for preferred creditors to accept, vitiates an assignment." Now it is evident that the conclusion of his honor is announced in the last sentence quoted; and with that conclusion we are not disposed to interfere. He merely intended the two cases quoted as authority for his position or conclusion. An examination of these cases will sustain the Circuit Judge in regarding them as authority for his conclusions of law. It is with this conclusion of law we are concerned. Let the exception be overruled.

The next alleged error is thus stated by appellants in their ninth exception: "In holding that the description of the prop-

erty in the assignment was as full as it ought to be in such an instrument, and that it describes the property so that it may be located and identified, and inquiry would have given all the information necessary to enable the creditors to form their judgment of its value." In the light of the testimony here, when applied to the instrument (deed of assignment) itself, we think the Circuit Judge was fully justified in holding as he did. Let the exception be overruled.

The thirteenth exception complains that the assignee exceeded his authority in issuing notice that he would pay out the funds in his hands to creditors on and after 18th December, 1891. We do not conceive that these plaintiffs have the right to urge this objection now. They have not accepted the assignment. Until they do so, they have no cause of complaint, because the other creditors, or many of them, have accepted the assignment, and thereby are entitled to be paid their money by the assignee. Assigned estates should be settled as promptly as prudence will allow. People who can act and will not act, thereby entailing loss or delay upon others equally meritorious with themselves, should be made to act. We know no better mode than notice that after a certain day funds will be distributed in which they are interested. The pocket nerve is very sensitive with most people. This exception is overruled.

The last exception remaining is the twelfth, and is in these words: "In not giving the several plaintiffs judgments against the defendant Cloud for the several amounts admitted to be due and owing to them respectively by the said defendant." The Circuit Judge did not directly name this matter in his decree. It must be assumed that when he ordered the action dismissed, he included in such order or judgment a denial of judgments to these plaintiffs respectively. Ordinarily, in these actions, judgment, when prayed for, as in this instance, against the debtor, would be rendered. There was proof here by some of plaintiffs' own testimony that a suit was pending in North Carolina on these same demands between the same parties, and also some testimony that the plaintiffs, Adler & Co. and the Empire Novelty Company, had assigned their claims, and their assignees had accepted under this assignment. Under

such circumstances, we can very well understand why the Circuit Judge declined to give judgment here. However, in the abundance of caution, in affirming the judgment of the Circuit Court, we will do so, except as to the right of the plaintiffs to obtain herein, if they can show themselves entitled thereto, judgments against the defendant, J. S. Cloud, on their respective demands. We could well wish that all parties would accept the assignment and share in its benefits; but that is not our business. It is only the expression of a hope.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, but without prejudice to the rights of plaintiffs to apply for judgments in this action against J. S. Cloud on their respective demands.